**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD CARTAGENA | : | |
| | : | |
| Appellant | : | No. 1223 MDA 2019 |

Appeal from the PCRA Order Entered July 3, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000496-2016

BEFORE:   STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED MARCH 27, 2020**

Richard Cartagena (Cartagena) appeals from the order of the Court of Common Pleas of York County (PCRA court) denying his first petition filed pursuant the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541-9546. Cartagena alleges that trial counsel rendered ineffective assistance by failing to seek dismissal of the charges pursuant to Pa.R.Crim.P. 600 and by inducing him to enter a guilty plea by assuring him that he would be sentenced to intermediate punishment.  We affirm.

**I.**

We glean the following facts from the record.  In July 2015, Cartagena was issued a valid prescription for Oxycodone, which he filled.  The original

_____

[*] Retired Senior Judge assigned to the Superior Court.

prescription did not include any refills. Cartagena made photocopies of the valid prescription and attempted to fill the prescriptions at several local pharmacies. At one of the pharmacies that filled the prescription, Cartagena paid for the pills with a counterfeit $50 bill.

On November 10, 2015, Cartagena was charged with Acquisition of a Controlled Substance by Misrepresentation and Forgery.[1] His preliminary hearing was scheduled for December 16, 2015, but was continued to January 19, 2016, for Cartagena to obtain representation.

At his pre-trial conference on April 11, 2016, Cartagena indicated that the case would be ready to proceed to trial in the July trial term, which ran from July 11th through the 29th. He requested that the case not be scheduled for trial during the court's May term. In the order issued following the pre-trial conference, the trial court noted that "Rule 600 time runs against the Defendant through the end of the July term." *See* Order, 4/11/16, at 2.

Cartagena was subsequently scheduled to enter a guilty plea on August 2, 2016. When he appeared in front of the trial court on that date, however, there was a breakdown in the relationship between Cartagena and his attorney. Counsel requested permission to withdraw from representation and Cartagena agreed. The trial court granted permission to withdraw and continued the proceedings. Cartagena subsequently retained plea counsel.

---

[1] 35 P.S. § 780-113(a)(12); 18 Pa.C.S. § 4101(a)(3).

On March 2, 2017, Cartagena filed a *pro se* Motion to Dismiss pursuant to Pa.R.Crim.P. 600 (Rule 600). On March 13, 2017, Cartagena entered an open guilty plea to one count of Acquisition of a Controlled Substance by Misrepresentation. 35 P.S. § 780-113(a)(12). The Commonwealth *nolle prossed* the remaining charges, and plea counsel orally withdrew Cartagena's *pro se* motion to dismiss.[2] Notes of Testimony, Plea Hearing, 3/13/17, at 2. At that time, plea counsel noted that Cartagena had been incarcerated for 486 days as a result of this case. *Id.* However, plea counsel noted excludable time from the preliminary hearing continuance (34 days) and the court scheduling continuance following the pretrial conference (109 days). *Id.* Plea counsel stated that based on those continuances, Cartagena would have been entitled to nominal bail, but not complete discharge. *Id.* at 2-3.

On his written guilty plea colloquy, in response to a question asking whether he had an agreement with the Commonwealth concerning the length of the sentence he would serve in exchange for his plea, Cartagena wrote "no." Guilty Plea Colloquy, 3/13/17 at 7. The following question provides space for the defendant to write the details of any agreement with the

---

[2] We note that Cartagena's *pro se* motion to dismiss under Rule 600 was a legal nullity, as a represented defendant is not entitled to hybrid representation and may not file *pro se* documents in his case. *Commonwealth v. Nischan*, 948 A.2d 349, 355 (Pa. Super. 2007). Thus, while plea counsel and the trial court spoke of "withdrawing" Cartagena's Rule 600 motion at his plea hearing, there was no properly filed motion to be withdrawn. Plea Hearing at 2-4.

Commonwealth. Cartagena wrote, "open plea to drug count. PSI; IP eval." *Id.* In the colloquy, Cartagena affirmed that he understood that the court was not obligated to sentence him in accordance with any agreement he had with the Commonwealth, and that no one had threatened, coerced or promised him anything in return for his plea. *Id.* at 8. He acknowledged the maximum penalty of 15 years' incarceration. *Id.* at 6. The court then conducted an oral colloquy reiterating these points. Plea Hearing at 4-5. After the oral colloquy, plea counsel requested an intermediate punishment evaluation, which the court granted. *Id.* at 7-8.

On May 2, 2017, Cartagena appeared for sentencing following a presentence investigation. The investigation had determined that he was ineligible for intermediate punishment based on his criminal record, and he was sentenced in the standard range of the sentencing guidelines to 6 to 12 years' incarceration. Notes of Testimony, Sentencing Hearing, 5/2/17 at 15. He filed a motion to withdraw his guilty plea, which the trial court denied following a hearing. This court affirmed the judgment of sentence on direct appeal, and our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Cartagena*, 1100 MDA 2017 (Pa. Super. March 20, 2018), *appeal denied*, 250 MAL 2018 (Pa. 2018).

Cartagena filed a timely *pro se* PCRA petition on October 23, 2018, and the PCRA court appointed counsel. After two supplemental petitions were filed, the PCRA court held an evidentiary hearing. Cartagena argued that plea

counsel was ineffective for promising him an intermediate punishment sentence when he was ineligible for intermediate punishment. He further argued that plea counsel was ineffective for failing to seek dismissal pursuant to Rule 600 when he entered his plea over 365 days after charges were filed.[3]

Cartagena testified on his own behalf at the hearing. He recalled that he had filed his *pro se* Rule 600 motion prior to his guilty plea hearing because he did not see any defense continuances listed on the docket sheet for the case. PCRA Hearing, 7/3/19, at 9. However, his plea counsel withdrew the motion at the hearing. *Id.* Because the complaint had been filed on November 10, 2015, and the guilty plea hearing was on March 13, 2017, he calculated that 488 days had elapsed. *Id.* at 10. Cartagena did not recall taking any defense continuances during that time period.

However, the PCRA court then interjected into Cartagena's testimony:

That would not be an accurate statement. There was a continuance granted at the preliminary hearing in order for the Defendant to acquire counsel for the period—the preliminary hearing was originally scheduled for December 16, 2015, and was continued to January 19, 2016 in order for the Defendant to acquire counsel. . . . And additionally, on April 11, 2016, the Defendant appeared for a pre-trial conference and requested to list his matter for trial term in July, which means he skipped over the May term, which would have been another period from April 11th, 20—I am sorry, until the July term. So, there are two periods of continuances.

---

[3] Cartagena raised a third issue arguing that his sentencing guidelines had been calculated erroneously, but he does not raise this issue on appeal.

*Id.* at 11. PCRA counsel did not dispute the PCRA court's recitation of these continuances, but asked Cartagena if he recalled any of those instances. *Id.* at 11-12. Cartagena said that he did not, but merely filed his motion based on what was reflected in the docket sheet. *Id.*

Regarding his second issue, Cartagena testified that plea counsel had told him about the intermediate punishment program and had assured him that "[w]e were fighting for it and getting it." *Id.* at 13-14. He recalled speaking with plea counsel and his original trial counsel, as well as with the officer in the case, and being told that he would be sentenced to drug court or intermediate punishment instead of prison. *Id.* On cross-examination, Cartagena acknowledged that he understood that he was entering an open guilty plea, but plea counsel also told him that he would not be sentenced to 6 to 12 years' incarceration. *Id.* at 17. Upon reviewing his written guilty plea colloquy, Cartagena conceded that the written terms of the agreement included the open plea and an evaluation for intermediate punishment, but no specific sentence. *Id.* at 23-24.

Plea counsel also testified to his recollection of the case. He testified that at the time of the plea hearing, he did not seek dismissal of the charges under Rule 600 because there were multiple periods of excludable time. *Id.* at 26. He stated that he explained the excludable time to Cartagena when he advised him to plead guilty. *Id.* He did not recall specific conversations regarding the plea, but stated that he argued in favor of intermediate

punishment because he believed that Cartagena would benefit from treatment. *Id.* When asked if he promised Cartagena that he would be sentenced to intermediate punishment, he stated, "I don't promise anything other than a fair shot in this Court." *Id.* at 26-27. He further testified that he explained what an open plea is, that the guidelines are advisory, and that the final sentence is set by the court. *Id.* at 28.

Following reception of the evidence, PCRA counsel argued that the excludable time, based on the PCRA court's representations regarding the two periods of delay, totaled only 114 days, leaving 374 days of delay prior to Cartagena's plea. *Id.* at 30. The Commonwealth argued that there were 143 days of excludable time, and only 343 days of delay had elapsed before the plea. *Id.* at 32-33. The difference in the calculations arose from whether the delay following the pre-trial conference was assessed through the beginning or the end of the July trial term. *Id.* Regarding Cartagena's second issue, PCRA counsel argued that he had been induced to plea through a promise of intermediate punishment. *Id.* at 31-32. However, counsel acknowledged that the issue was one of credibility between Cartagena and plea counsel. *Id.*

The PCRA court denied the petition. It found that the time calculation was close, but there had been no testimony regarding whether the Commonwealth had exercised due diligence even if the 365 days had been exceeded by the time Cartagena entered his plea. *Id.* at 36-37. The PCRA court further found that Cartagena received the full benefit of his bargain with

his open plea, as he had knowingly agreed to an open sentence with an evaluation for intermediate punishment eligibility. *Id.* at 35-36. Cartagena filed a timely notice of appeal, and he and the PCRA court have complied with Pa.R.A.P. 1925.[4]

## II.

## A.

We first address Cartagena's claim that counsel was ineffective for failing to seek dismissal of his charges pursuant to Rule 600. "[T]o succeed on an ineffectiveness claim, a petitioner must demonstrate that: the underlying claim is of arguable merit; counsel had no reasonable basis for the act or omission in question; and he suffered prejudice as a result[.]" *Commonwealth v. Laird*, 119 A.3d 972, 978 (Pa. 2015) (citations omitted). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). Finally, counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012).

---

[4] "Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (quoting *Commonwealth v. Garcia,* 23 A.3d 1059, 1061 (Pa. Super. 2011)).

Under Rule 600, a case must be called to trial or a plea must be tendered within 365 days from the date on which the criminal complaint was filed. Pa.R.Crim.P. 600(A)(2)(a). When computing the time that has elapsed, "periods of delay caused by the defendant," also known as excludable time, are excluded from the length of time that has elapsed from when the complaint was filed. Pa.R.Crim.P. 600(C)(2). When a continuance is granted, the subsequent order should "record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule." Pa.R.Crim.P. 600(C)(3)(a)(ii).

When analyzing a Rule 600 claim, we first calculate the mechanical run date, which is 365 days from the date the complaint was filed. *Commonwealth v. Moore*, 214 A.3d 244, 248-49 (Pa. Super. 2019). We then add the excludable time to the mechanical run date to calculate the adjusted run date.[5] *Id.* If the defendant does not enter a plea or begin trial by the adjusted run date, he may file a written motion seeking dismissal of all charges with prejudice. Pa.R.Crim.P. 600(D)(1). The defendant bears the

_____

[5] Excusable time, or periods of Commonwealth delay during which the Commonwealth exercised due diligence, is also added to the mechanical run date to calculate the adjusted run date. *Commonwealth v. Moore*, 214 A.3d 244, 248-49 (Pa. Super. 2019). No such periods of delay are at issue here.

burden of proof to establish a violation of Rule 600. **Moore**, **supra**, at 248 (citations omitted).

Here, the complaint was filed on November 10, 2015. Accordingly, the mechanical run date was November 10, 2016. It is undisputed that Cartagena requested a continuance of his preliminary hearing to obtain counsel, resulting in 34 days of delay. This period of delay brings the adjusted run date to December 14, 2016. Cartagena also requested a continuance to the July trial term at his pre-trial conference on April 11, 2016. The parties agree that this is excludable time, but disagree as to the length of the continuance. PCRA Hearing at 30-33. Cartagena argues that the excludable time should run until the beginning of the July trial term, while the Commonwealth argues that the excludable time runs until the end of the July trial term.[6] **Id.**

In its order following the pre-trial conference at which Cartagena requested to continue the case to the July 2016 trial term, the trial court noted

_____

[6] The July trial term ran from July 11 to July 29, 2016. Order, 4/11/16, at 1. Cartagena did not offer any evidence at the PCRA hearing regarding when the court's May trial term would have begun. It is evident from counsel's argument that he was calculating the period of delay as running from the beginning of the May term, while the Commonwealth calculated the delay as running from the April pre-trial conference. We note that when a PCRA petitioner alleges ineffective assistance of counsel, he has the burden of proving that the underlying claim has arguable merit and setting forth all relevant evidence in support of his claim. **Commonwealth v. Smith**, 181 A.3d 1168, 1174-75 (Pa. Super. 2018). Nevertheless, because we find additional excludable delay based on Cartagena's request for new counsel at his first plea hearing, **infra**, this discrepancy does not affect our analysis.

that "Rule 600 time runs against the Defendant through the end of the July term." Order, 4/11/16, at 2. In fact, Cartagena did not appear in front of the trial court again until August 2, 2016. As a result of his continuance request at the pre-trial conference, he was not able to enter a plea or proceed to trial at any point during the July term. The 109 days between April 11, 2016, and July 29, 2016, is excludable delay. This delay brings the adjusted run date to April 2, 2017, well after Cartagena's March 13, 2017 guilty plea.

We also note an additional period of delay not addressed by Cartagena or the Commonwealth. On August 2, 2016, Cartagena appeared to enter a guilty plea, but elected not to do so due to a breakdown in the relationship with his counsel. Counsel sought to withdraw, and Cartagena agreed that he could not proceed to enter his plea with his current counsel. Notes of Testimony, First Plea Hearing, 8/2/16, at 6-8. Thus, the trial court continued the proceedings for Cartagena to retain new representation and placed the case on the trial list for September. Where proceedings are continued due to lack of counsel and the defendant did not waive his right to counsel, the resulting period of delay is excludable time. **Commonwealth v. Roles**, 116 A.3d 122, 127 (Pa. Super. 2015). Thus, an additional period of delay from August 2, 2016, to September 1, 2016,[7] is excludable.

---

[7] Again, we note that the record does not reflect the exact dates of the September trial term.

Based on these calculations, Cartagena's claim that the charges should have been dismissed pursuant to Rule 600 lacks arguable merit. **See Laird**, **supra.** As this is an essential element of a claim of ineffective assistance of counsel, the PCRA court did not err in denying this claim.

**B.**

We now turn to Cartagena's claim that trial counsel was ineffective because he induced Cartagena to plead guilty by promising that he would be sentenced to intermediate punishment, even though Cartagena was not eligible for intermediate punishment.

To determine whether a plea was knowingly, voluntarily and intelligently entered, the court must inquire into six areas. **See** Pa.R.Crim.P. 590, *cmt* (plea court must question the defendant regarding whether he understands the nature of the charges, the factual basis for the plea, his right to a jury trial, the presumption of innocence, the permissible sentencing ranges, and that the court has the right to reject the agreement). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." **Commonwealth v. Moser**, 921 A.2d 526, 531 (Pa. Super. 2007) (internal quotations and citation omitted).

> [C]laims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea. . . . The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made.

- 12 -

Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.

*Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001) (citations omitted).

The thorough written and oral colloquies preceding Cartagena's open guilty plea belie his assertions that his plea was unknowing and involuntary. Plea counsel repeatedly stated at the hearing that Cartagena was seeking an intermediate punishment evaluation so that the trial court could "make an independent decision" as to his sentence. Plea Hearing at 2-3, 7. Plea counsel and the Commonwealth stated that there was no agreed-upon sentence, and during his oral colloquy, Cartagena affirmed that he had not been promised anything, had not been threatened, or coerced to enter his plea. *Id.* at 2-3, 5, 7. The trial court questioned Cartagena regarding his right to proceed to trial and the factual basis for the charge. *Id.* at 5-7. In his written colloquy, Cartagena wrote that there was no agreed-upon sentence and that he would receive a presentence investigation and intermediate punishment evaluation. Guilty Plea Colloquy, 3/13/17 at 7. There is no support in the written colloquy or in the record of the plea hearing for Cartagena's contention that plea counsel promised a sentence of intermediate punishment.

Cartagena seeks to support his claim of ineffective assistance of counsel by arguing that his averments in his written and oral colloquy were not entirely true, and that plea counsel had promised him a sentence of intermediate punishment that is not reflected in the colloquy.  However, Cartagena is bound by the statements he made during his plea colloquy and he cannot now argue that his statements under oath were false.  **McCauley**, **supra.**  As there is no evidence that Cartagena's guilty plea was induced by ineffective assistance of his trial counsel, this claim fails.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/27/2020